## MELLON, DIRECTOR GENERAL, *v.* MICHIGAN TRUST COMPANY, RECEIVER.

### APPEAL FROM AND CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 272. Argued April 27, 1926.—Decided May 24, 1926.

1. In view of § 10 of the Federal Control Act, a claim for transportation charges and for conversion of goods shipped, presented by the Director General of Railroads against an insolvent who made a voluntary assignment, is not entitled to the priority granted the United States by Rev. Stats. § 3466. P. 237.

2. Cause *held* to be reviewable by certiorari and not by appeal. P. 240.

2 Fed. (2d) 194, affirmed.

CERTIORARI to a judgment of the Circuit Court of Appeals which sustained the District Court in denying priority of payment to a claim made by the Director General of Railroads in a suit to wind up affairs of an insolvent corporation. An appeal also was taken, and is dismissed.

*Mr. Sidney F. Andrews,* with whom *Messrs. A. A. McLaughlin, George M. Clapperton,* and *Charles M. Owen* were on the brief, for appellant and petitioner.

The claims filed by the Director General were claims on behalf of the United States. *In re Hibner Oil Co.,* 264 Fed. 667; *In re Tidewater Coal Exch.,* 280 Fed. 648; *Davis* v. *Pullen,* 277 Fed. 650; *Davis* v. *Miller-Link Lumber Co.,* 296 Fed. 649; *United States* v. *Butterworth-Judson Corp.,* 269 U. S. 504; *DuPont de Nemours & Co.*

v. *Davis,* 264 U. S. 456; *Davis* v. *Corona Coal Co.,* 265 U. S. 219.

They were, under § 3466, Rev. Stats., entitled to priority, because the debtor, when insolvent, made a voluntary assignment of all his property for the benefit of his creditors and the receiver was invested with title as trustee for the creditors, and hence bound to give priority to these claims.

*Mr. Stuart E. Knappen* for appellee and respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Creditors of the Rathbone Manufacturing Company filed a bill against it in the United States District Court, Western District of Michigan, wherein they alleged its inability to pay lawful debts in due course, etc., and asked for a receiver. Answering, the corporation, (which was, in fact, insolvent,) admitted the allegations and gave consent to the relief prayed. Thereupon, the Michigan Trust Company was appointed receiver, took possession of the property and entered upon administration of the trust.

The Director General of Railroads presented claims for transportation charges and conversion of a shipment of pig iron. He asked priority of payment, which was denied by both the trial court and the Circuit Court of Appeals. 2 Fed. (2d) 194.

As pointed out in *United States* v. *Butterworth-Judson Corporation,* 269 U. S. 504, the things done by the Rathbone Manufacturing Company amounted, in substance, to a voluntary assignment of all its property within the meaning of R. S. § 3466.* Consequently, if the Director

---

* "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due

General is entitled to the priority granted to the United
States by that section, the judgment below must be re-
versed. But it is said here, and was held below, that
such priority is inhibited by the provisions of § 10, Act of
March 21, 1918, c. 25, 40 Stat. 451, 456, which provides—

" That carriers while under Federal control shall be sub-
ject to all laws and liabilities as common carriers, whether
arising under State or Federal laws or at common law, ex-
cept insofar as may be inconsistent with the provisions of
this Act or any other Act applicable to such Federal con-
trol or with any order of the President. Actions at law
or suits in equity may be brought by and against such car-
riers and judgments rendered as now provided by law;
and in any action at law or suit in equity against the car-
rier, no defense shall be made thereto upon the ground
that the carrier is an instrumentality or agency of the
Federal Government. Nor shall any such carrier be en-
titled to have transferred to a Federal court any action
heretofore or hereafter instituted by or against it, which
action was not so transferable prior to the Federal control
of such carrier; and any action which has heretofore been
so transferred because of such Federal control or of any
Act of Congress or official order or proclamation relating
thereto shall upon motion of either party be retransferred
to the court in which it was originally instituted. But no
process, mesne or final, shall be levied against any prop-
erty under such Federal control."

Under *Davis* v. *Pringle*, 268 U. S. 315, if the estate of
the Rathbone Manufacturing Company were being ad-

from the deceased, the debts due to the United States shall be first
satisfied; and the priority hereby established shall extend as well to
cases in which a debtor, not having sufficient property to pay all his
debts, makes a voluntary assignment thereof, or in which the estate
and effects of an absconding, concealed, or absent debtor are attached
by process of law, as to cases in which an act of bankruptcy is com-
mitted."

ministered under the Bankruptcy Act the claims of the Director General would not be entitled to preference.    It is also plain, under *Bramwell* v. *United States Fidelity & Guaranty Co.*, 269 U. S. 483; *Price* v. *United States, id.* 492; and *United States* v. *Butterworth-Judson Corporation, supra,* that, in proceedings like the present one, debts due directly to the United States, nothing else appearing, are ordinarily entitled to priority under R. S. § 3466.    Decision of this cause, therefore, must turn upon the effect to be given § 10, Act of 1918, *supra.*

All agree that the rights of the Director General rest upon statutory provisions, and not upon any sovereign prerogative of the United States.    In taking over and operating the railroads, the United States acted in their sovereign capacity. *DuPont de Nemours & Co.* v. *Davis,* 264 U. S. 456, 462.    But it was for Congress to determine whether or not claims arising out of such operation should have priority when the debtor made a voluntary assignment.    In cases of bankruptcy the statute then in force prohibited any preference.

In some matters, at least, under § 10, the United States stand exactly as if they were a railroad corporation operating as a common carrier. *Director General* v. *Kastenbaum,* 263 U. S. 25, 28.    As said in *Davis* v. *Pullen,* 277 Fed. 650, 655, " there is a certain obvious injustice in giving the United States when engaged in an industrial and commercial venture, even although under war powers, superior rights over other creditors bearing like relations to insolvents."    And we think that the indicated purpose of Congress will be best carried out by construing the relevant statutes, so far as may be, with the general intent to preserve the substantive rights of all parties concerned as they would have existed but for federal control.

Section 10 subjected the Director General, as an operator of common carriers, to the laws theretofore applicable

to them, except when inconsistent with some provision of the federal control acts or an order of the President, and forbade him to defend, in any suit against him as such operator, upon the ground that he was an instrumentality or agency of the federal government. In the circumstances presented by this record, it is reasonable to say that the statute confined his substantive rights to those which a carrier would have had, and prohibits him as though he were an actual defendant in a suit, from resisting the demands of others for equal distribution of the insolvent's assets, under the commonly-applied rule, upon the ground that he is an instrumentality of the federal government. To permit the claimed preference, we think, would conflict with the spirit and broad purpose of the statute. These become plain enough upon consideration of the just ends which Congress had in view together with the recent policy, revealed by the Bankruptcy Act, in respect of priorities.

The cause is properly here on the writ of certiorari. The appeal was improvidently allowed by the circuit judge, and is dismissed.

The decree below is

*Affirmed.*